

| Judicial Links | eFiling | Help | Contact Us | Print | GrantedPublicAccess **Logoff NCAMMARATA** |

**2122-CC08810 - MCCORMACK BARON SALAZ ET AL V USI INSURANCE SERVIC (E-CASE)**

Case | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/Execution

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending   ○ Ascending
Display Options: All Entries

---

**07/13/2021**   ☐ **Jury Trial Scheduled**
   *Scheduled For:* 01/24/2022; 9:00 AM ;  MICHAEL FRANCIS STELZER;  City of St. Louis

**07/09/2021**   ☐ **Summons Issued-Circuit**
   Document ID: 21-SMCC-9325, for USI INSURANCE SERVICES, LLC.

**07/08/2021**   ☐ **Filing Info Sheet eFiling**
   *Filed By:* JOSHUA M. SCHINDLER

   ☐ **Pet Filed in Circuit Ct**
   Petition.
   *Filed By:* JOSHUA M. SCHINDLER
   *On Behalf Of:* MCCORMACK BARON SALAZAR, INC, MCCORMACK BARON MGT., INC., AS AGENT FOR GEORGE L. VAUGHN

   ☐ **Judge Assigned**

---

Case.net Version 5.14.19                Return to Top of Page                Released 07/15/2021

EXHIBIT A



## IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number:  2122-CC08810 | |
|---|---|---|
| Plaintiff/Petitioner:<br> MCCORMACK BARON SALAZAR, INC<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>JOSHUA M. SCHINDLER<br>141 NORTH MERAMEC, SUITE 201<br>SAINT LOUIS, MO  63105 | |
| Defendant/Respondent:<br> USI INSURANCE SERVICES, LLC<br>Nature of Suit:<br>CC Breach of Contract | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | (Date File Stamp) |

### Summons in Civil Case

**The State of Missouri to:**  USI INSURANCE SERVICES, LLC
**Alias:**
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

**ST LOUIS COUNTY SHERIFF**

*COURT SEAL OF CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

July 9, 2021                                                        _Thomas Kloeppinger_
_____                      _____
           Date                                                                  Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
         Printed Name of Sheriff or Server                                                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**
Subscribed and sworn to before me on _____ (date).
(Seal)
My commission expires: _____           _____
                                                   Date                                                  Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**2122-CC08810**

Electronically Filed - City of St. Louis - July 08, 2021 - 03:01 PM

# IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
# STATE OF MISSOURI

| | |
|---|---|
| MCCORMACK BARON SALAZAR, INC., and ) <br> MCCORMACK BARON MANAGEMENT, INC. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> USI INSURANCE SERVICES LLC ) <br> ) <br> Serve at:   120 South Central Avenue ) <br>                Clayton, Missouri, 63105   ) <br> ) <br> Defendant. ) | Cause No.: _____ <br><br> Division No.: _____ |

## PETITION

COME NOW Plaintiffs McCormack Baron Salazar, Inc. ("MBS") and McCormack Baron Management, Inc. ("MBM"), by and through undersigned counsel, and for their Petition, state as follows:

**Parties, Jurisdiction, and Venue.**

1.  Plaintiffs are Missouri corporations with their principal places of business in St. Louis, Missouri. MBM is the successor in interest to McCormack Baron Ragan Management Services, Inc. ("MBRMS").

2.  Defendant USI Insurance Services LLC ("USI") is a Delaware limited liability company, with an office in St. Louis, Missouri and its registered agent located in Clayton, Missouri. By acquisition (the "Acquisition") in December of 2017, USI became successor in interest to Wells Fargo Insurance Services USA, Inc. ("Wells Fargo" and with USI, collectively, the "Brokers").

3. The acts and omissions alleged by this Petition, including but not limited to formation, fulfillment, and/or breach of the underlying contract and fiduciary duty, occurred in St. Louis, Missouri.

**General Allegations.**

4. MBM and MBS, through its authorized agent MBM, entered into an agreement (the "Services Agreement") with USI's predecessor in interest, Wells Fargo.

5. The Services Agreement was in effect at all times relevant to this matter. USI became responsible for all liabilities and obligations of Wells Fargo thereunder, pursuant to the Acquisition, and MBM succeeded to all rights and interests held by MBRMS thereunder.

6. The Services Agreement provided, among other things, that Wells Fargo would: complete risk identification, risk assessment, risk program design, and implementation of risk management program, conduct exposure analysis, quantify risk retention and appetite, conduct an insurance program audit, analyze current insurance program and make recommendations for program enhancement, review coverage, and oversee the quality and success in the delivery of all services (collectively, the "Insurance Services"); for the benefit of Plaintiffs.

7. At all relevant times Wells Fargo knew that MBS was a real estate developer.

8. Wells Fargo also knew that the development agreements MBS entered into with its clients (i.e., the project and/or property owners) included terms that guaranteed the completion of their construction projects, and potentially required MBS to limit these clients' losses related to construction and design defects caused by third-parties, including project architects and contractors (the "Development Risk").

9. Wells Fargo also knew or should have known that Plaintiffs were relying upon it to: a) recommend specific insurance policies and coverages to offset risks arising from MBS's real

Electronically Filed - City of St. Louis - July 08, 2021 - 03:01 PM

estate development business, including the Development Risk; and b) to notify their insurance providers/carriers of potential insured losses and claims against its policies within the time required thereby.

10. Wells Fargo procured "Professional Liability" insurance for Plaintiffs, which Wells Fargo represented was sufficient to cover MBS's work as a real estate developer and any and all MBS Development Risk. As such, Wells Fargo represented that any exclusions to coverage under such policies, for losses arising from construction management activities, would be inapplicable to MBS's work as a real estate developer.

11. Neither Wells Fargo nor USI informed Plaintiffs of the availability of "Owners Protective Professional Indemnity Insurance" or any other policies or endorsements which they now claim are necessary to provide coverage for MBS Development Risk.

12. On or about January 15, 2016, MBS entered into a Development Services Agreement (the "MBS Contract") with a client for the development of a project commonly referred to as "Covenant Place."

13. Pursuant to the MBS Contract, MBS guaranteed the completion of Covenant Place construction as part of MBS's developer services, and specifically agreed to "Cause the Project to be completed on or before the Completion Date in a manner consistent with good workmanship…."

14. As of this filing, more than $8.1 million have been spent addressing certain Covenant Place defects related to Development Risk (the "Losses"), not including attorney's fees and other recoverable litigation costs.

15. Without admitting any tort or contract liability, Plaintiffs have paid to remediate and/or mitigate all or a significant portion of the Losses (the "Payments").

Electronically Filed - City of St. Louis - July 08, 2021 - 03:01 PM

Case: 4:21-cv-00993-SEP   Doc. #: 1-1   Filed: 08/09/21   Page: 6 of 10 PageID #: 11

Electronically Filed - City of St. Louis - July 08, 2021 - 03:01 PM

16. Despite Brokers' prior representations that Plaintiffs carried sufficient insurance, Brokers unilaterally decided to not submit a claim for such losses to Plaintiffs' Professional Liability carriers, having determined without Plaintiffs' authority or consent that these policies did not provide coverage.

17. On information and belief, Brokers formed this coverage opinion prior to the Losses. Regardless, Brokers did not inform Plaintiffs of this opinion, or their decision to not submit a claim to Plaintiffs' Professional Liability carriers relating to the Payments and Development Risk, within the time required by such carriers to submit notices of claims.

**Count I – Breach of Contract**

18. All prior allegations and paragraphs are restated and fully incorporated herein.

19. The Brokers entered into the Services Agreement with Plaintiffs, whereby they agreed to provide Plaintiffs with the Insurance Services.

20. Plaintiffs performed their obligations under such contract.

21. The Brokers breached this contract:

   a. by failing to review or accurately analyze all insurance policies applicable to the Covenant Place project, so as to properly inform Plaintiffs of potential gaps in coverage, including those related to Development Risk and/or lack of "additional insured" status;

   b. by failing to inform Plaintiffs that the policies it held pursuant to Brokers' recommendations would or might not provide coverage for the Payments and/or losses arising from Development Risk;

   c. by incorrectly representing to Plaintiffs that their insurance coverage was sufficient;

    d. by unilaterally making the opposite coverage determination regarding the Payments, and thereafter failing to inform Plaintiffs' providers (including but not limited to their Professional Liability providers) of Covenant Place losses relating thereto and/or arising from Development Risk within the time required thereby; and/or

    e. by failing to timely inform Plaintiffs of this coverage determination and/or Brokers' decision to withhold claims notifications to Plaintiffs' Professional Liability policy providers.

22. In reliance on these contract obligations, Plaintiffs reasonably believed it had obtained insurance coverage for damages and loss related to the Payments and/or losses arising from Development Risk.

23. In reliance on the Brokers' contract obligations, MBS entered into the MBS Contract, thereby agreeing to limit the Covenant Place owner's liability arising from Development Risk.

24. In reliance on the Brokers' contract obligations, Plaintiffs made the Payments and paid other costs related to the repair and mitigation of Covenant Place damages and losses.

25. As a direct result of the Brokers' breaches of contract stated herein, Plaintiffs were damaged by not having insurance that would reimburse them for the Payments and other costs to repair and mitigate losses.

WHEREFORE, Plaintiffs ask for judgement in an amount exceeding $25,000.00, and for other relief as is deemed appropriate.

### Count II – Breach of Fiduciary Duty

26. The facts and allegations stated in paragraphs 1-17 are restated and fully incorporated herein.

27. The Brokers held themselves out to Plaintiffs as insurance experts. Moreover, by agreeing to provide the Insurance Services to Plaintiffs, Wells Fargo created a special relationship as their insurance broker.

28. When choosing the types and amounts of insurance coverage to hold, Plaintiffs reasonably relied upon the Brokers' claims of insurance expertise, as well as the Brokers' knowledge of real estate development risks, the Development Risk, MBS business practices, and the Covenant Place project specifics (including the terms and limits of all insurance policies applicable thereto).

29. The Brokers owed Plaintiffs a fiduciary's duty of care, and were required to exercise reasonable skill, diligence, and care in the handling of the insurance duties entrusted to them.

30. The Brokers breached this duty:

   a. by failing to review or accurately analyze all insurance policies applicable to the Covenant Place project, so as to properly inform Plaintiffs of potential gaps in coverage, including those related to Development Risk and/or lack of "additional insured" status;

   b. by failing to inform Plaintiffs that the policies they held, and which Brokers recommended to them would or might not provide coverage for Payments and/or losses arising from Development Risk;

   c. by representing to Plaintiffs that their insurance coverage was sufficient;

Electronically Filed - City of St. Louis - July 08, 2021 - 03:01 PM

    d.    by unilaterally making the opposite coverage determination regarding the Payments, and thereafter failing to inform Plaintiffs' providers (including but not limited to their Professional Liability providers) of Covenant Place losses relating thereto and/or arising from Development Risk within the time required thereby; and/or

    e.    by failing to timely inform Plaintiffs of this coverage determination and/or Brokers' decision to withhold claims notifications to Plaintiffs' Professional Liability policy providers.

31. In reliance on the Brokers' expertise and their duties and obligations as their insurance broker, Plaintiffs reasonably believed they had obtained insurance coverage for damages and loss related to the Payments and/or losses arising from Development Risk.

32. In reliance on the Brokers' expertise and their duties and obligations as its insurance broker, MBS entered into the MBS Contract, agreeing to limit the Covenant Place owner's liability arising from Development Risk.

33. In reliance on the Brokers' expertise and their duties and obligations as their insurance broker, Plaintiffs reasonably believed the Brokers had provided notice of Covenant Place Losses and Payments to all relevant insurance carriers.

34. In reliance on the Brokers' expertise and their duties and obligations as its insurance broker, Plaintiffs made the Payments and paid other costs related to the repair and mitigation of Covenant Place damages and losses.

35. As a direct result of the Brokers' breaches of duty stated herein (individually or collectively constituting gross negligence), Plaintiffs were damaged by not having insurance that

Electronically Filed - City of St. Louis - July 08, 2021 - 03:01 PM

would reimburse them for the Payments and other costs to repair and mitigate Covenant Place losses, and/or by being denied coverage for same in whole or in part.

WHEREFORE, Plaintiffs ask for judgement in an amount exceeding $25,000.00, and for other relief as is deemed appropriate.

Respectfully submitted,

THE SCHINDLER LAW FIRM, P.C.

/s/ Joshua M. Schindler_____
Joshua M. Schindler, #37891
7710 Carondelet Ave., Ste. 333
Clayton, Missouri 63105
(314) 862-1411; (314) 862-1701 (Fax)
josh@schindlerlawfirm.com

*Attorneys for Plaintiffs*